**CITIES' SERVICE OIL CO. v. FAVER.**
**(No. 12139.)**

Court of Civil Appeals of Texas. Fort Worth. April 27, 1929.

Rehearing Denied June 8, 1929. On Second Motion for Rehearing, July 13, 1929.

Phillips, Trammell, Chizum & Price and Charles L. Terry, all of Fort Worth, for appellant.

Kirby, King & Overshiner, of Abilene, and Levy & Evans, of Fort Worth, for appellee.

CONNER, C. J. For several years appellee, Faver, was employed and acted as the agent of appellant corporation in the sale of gas, oil, and other petroleum products at an agreed commission upon the sales made. The written contract executed by appellee at the time of his employment, and by virtue of which he acted, contained, among other provisions not necessary to notice, the following:

(A) "No sales, other than for cash, are to be made by the agent, unless authorized, in writing, by the Credit Manager, but if said agent does sell in violation of instructions, or on credit, without said authority, or extend credit in excess of amount authorized, he will be liable for said amount."

(B) "It is agreed that should the agent make any sales, or handle the proceeds thereof, in violation of the terms of this contract, or of any instruction issued as provided herein, that said agent shall be liable to said Company for such sales or proceeds or any damage the Company suffers therefrom."

In the conduct of the business, it was the practice of appellant company to extend to designated purchasers what is termed "credit ratings" of 30 days. On September 25, 1926, a written instruction, addressed to and re-

ceived by appellee and signed by the "Cities Service Oil Credit Department," approved by W. A. Riley, "Division Manager," declared that: "You are authorized to limit above customer to $50.00 thirty day terms."

The customer referred to in this authorization was the Blue Jay Service Station. A similar communication, dated October 19, 1926, signed and approved as before, increased the credit rating of the Blue Jay Service Station to $250 thirty-day terms. Yet later, to wit, on November 30, 1926, appellee received by due course what is designated as an "analysis of outstanding accounts." This analysis consisted of a written statement of the state of the accounts of some fifteen customers at Abilene to whom appellee had sold the products in question, setting opposite the name of each the credit rating and amount outstanding against the customer. This sheet showed that the Blue Jay Service Station had a credit rating of $750, a rating theretofore applied for by appellee upon a statement rendered. This sheet did not appear to have been signed or approved by any one, but, as will hereinafter appear, it was regularly prepared and issued out of the bookkeeping department of appellant company.

Later, appellee's connection with the company was severed, several months after which, on, to wit, December 7, 1927, the appellant company instituted this suit, alleging among other things not necessary to notice, that appellee during the term of his agency had sold to the Blue Jay Service Station on credit in excess of his instructions an unpaid balance of $565.66, for which, less the sum of $175.73 allowed appellee for unpaid commissions due him, appellant sought recovery.

Appellee answered, and, among other things, denied generally the allegations of plaintiff's petition, and alleged specially that in March, 1927, after appellee had been checked out on the 6th day of January, 1927, the owner of the Blue Jay Service Station, to wit, Ernest Moore, transferred and delivered all of the fixtures, goods, wares, and merchandise owned by him, of the value of $800, to appellant to secure it in the indebtedness the station owed plaintiff, and that later the appellant sold said fixtures, goods, wares, and merchandise, accepting therefor the promissory note of Mrs. Turner and her son without the knowledge or consent of appellee, for the sum of $565.66, and hence that appellee was estopped from now claiming the indebtedness sued for. Appellee further filed a cross-plea seeking to recover the unpaid commissions due him which had been referred to in appellant's petition.

The case was submitted to a jury upon special issues, which, together with the answers thereto, are as follows:

"1. Did the plaintiff, Cities Service Oil

392

Company, through its credit manager, on or about December 8, 1926, authorize, in writing, a monthly credit rating for the Blue Jay Service Station at Abilene, Texas, in the amount of $750.00? Answer: Yes.

"2. Did the defendant, J. L. Faver, rely upon the monthly analysis sheet received by him from the credit manager of the plaintiff company, on or about December 8, 1926, as authorizing a monthly credit rating for the Blue Jay Service Station at Abilene in the amount of $750? Answer: Yes."

Upon the verdict so rendered, the court entered its judgment denying appellant any recovery and adjudged in appellee's favor on his cross-plea for commission the sum of $119.20. This appeal has been duly prosecuted from the judgment so rendered.

The material questions raised by appellant's assignments of error are based, in substance, upon the contention that the evidence was insufficient to authorize the submission of the special issues quoted or to enter the judgment rendered, and the question of the sufficiency of the evidence depends in turn upon the effect to be given to the analysis sheet fixing the credit rating of the Blue Jay Service Station at $750; it being the contention of appellant that the analysis sheet, not having been signed and approved by the credit manager, was not available to appellee under the terms of his contract, and that the only credit ratings to which the Blue Jay Service Station was entitled was the $50 and $250 credits hereinbefore mentioned.

As pertinent to the contentions noted, the appellee, Faver, testified that he had been in the employ of the Cities' Service Oil Company continuously for eight years prior to January, 1927, in the capacity of agent, salesman, and supervisor; that the agents received monthly analysis sheets showing the credit allowance of the various customers, and that such sheets constituted instructions from the credit department; that the analysis sheet for November, 1928, was received by him about December 8th or 9th. He further testified:

"During the eight years I was with the Cities Service Oil Company and in various capacities in which I served, I received from time to time advice from the credit department of the company as to various ratings of the various customers. That information came in the form of credit analyses from the credit manager here in Fort Worth. Yes, sir, I got letters also, and telegrams. Yes, sir, I received such forms as defendant's exhibits Nos. 3, 4, and 5, which have been introduced in evidence. You ask me to state to the jury whether or not the credit rating of customers some times were changed. Well, ordinarily they established a credit rating from the general office down there, but automatically if an account became insolvent that was changed either by telegram or telephone. At the time

I was salesman supervisor, I was governed exclusively by such instructions. I had no other way to know. For that reason you can have credit ratings in your files and the credit department wires you something different. I was governed exclusively by analyses and from then on, in the operation of my business, I went more according to the analyses than on the rating because they were insignificant lots of times. These sheets were in fact instructions from the credit department, as I understood.

"The last instructions which I had received from the company was the analysis sheet marked defendant's exhibit No. 8 showing credit rating as $750.00. Yes, sir, I acted on that."

W. O. Stephens, who was credit manager for plaintiff, and had occupied that position for nine and a half years, testified as a witness for plaintiff, and on cross-examination this witness testified that the monthly analysis sheets were sent to the agents once each month, and he identified the Defendant's Exhibit No. 8 as such an analysis sheet which was sent to Faver. This witness further testified, with respect to Defendant's Exhibit 8, as follows:

"It was sent from my department and under my direction. Yes, sir, there is a column on which the rating of various customers is shown. Yes, sir, the credit rating of the Blue Jay Service Station is shown on that sheet. The credit of the Blue Jay Service Station on that sheet of paper is 7½, which means $750.00. Yes, sir, these blanks such as defendant's exhibit No. 8 and defendant's exhibit No. 9 were kept in my office for the use of the credit department. Whenever there was an occasion to fill them out, they were sent out by the bookkeeping department. Yes sir, that is a part of my office. Yes, sir, they were working under me."

We can but think that the evidence referred to and quoted sufficient not only to authorize the submission of the issues referred to, but also to support the judgment as rendered; there being no contention that a less sum was due appellee as commissions, and the briefs of both parties, seemingly at least, assuming that, if the analysis sheet of December 8th was authorized, the judgment is correct. The written contract by the parties does not specially provide that the only credit ratings authorized were to be those bearing the individual signature of the credit manager. If the analysis sheets were issued from his department and under his direction, as he testified and as appellee during his long course of service received them and acted upon them, without objection appearing, such sheets must be given effect. It is argued that appellee in fact did not act upon such sheets; that he in fact violated his credit instructions. The contract evidently contemplated that the exigencies of the service might make

it advisable to extend credit to a customer beyond the instructions, for such a contingency is provided for in the contract by the provision that, in event the credit ratings were not observed, he (the agent) should be personally responsible. Appellee testified that he acted upon the analysis sheets, evidently meaning that he was guided by them in determining the authorized credits, and not that he never exercised an individual discretion to extend a credit beyond the authorized amount.

The note given by Mrs. Hunt and her son for the purchase price of the property and equipment of the Blue Jay Service Station was never paid, and we do not feel prepared to hold that the acceptance of the note of itself would discharge a legal indebtedness of appellee, had one existed. But the sale referred to was negotiated by one of appellant's agents, the note made payable to appellant instead of Moore, the seller in amount of Moore's indebtedness to appellant, and these circumstances, coupled with the entries on one of appellant's ledger sheets offered in evidence to the effect that appellee was "out" and his account "O. K.," was competent as tending to show that at the time of the ledger entry it was not thought by appellant's managing officer that appellee was indebted in any sum by reason of the matter of which appellant now complains.

For the reasons hereinbefore stated, we conclude that all assignments of error should be overruled and the judgment affirmed.

### On Motion for Rehearing.

Among other things, it is insisted with force that, even if appellee's credit rating was $750 instead of $250, as appellant sought to show, appellant was nevertheless entitled to a judgment against appellee for a balance of $389.93 still due and unpaid after applying in appellee's favor all payments and earned commissions. This contention is based on the argument that appellee was not entitled to receive any benefit from the payment of $589.46 on the total credit of $1,405.12, which the facts show that appellee extended to the Blue Jay Service Station. This contention was not pressed upon us on original presentation of this case, and we hence stated in our original opinion that "the briefs of both parties, seemingly at least," assumed that, if the analysis sheet of December 8th was authorized, the judgment of the court below was correct. In other words, we then assumed, without discussion, that the total indebtedness of the Blue Jay Service Station, after deducting the $589.46 payment, was less than the authorized credit found by the jury, and hence that no personal liability rested on appellee. This conclusion, as it seems to us, necessarily follows, unless, as appellant contends, it had and exercised the right of an election to apply the credit payment so as to exclude appellee from any benefit by reason thereof. The payment, however, was applied to the whole indebtedness without anything in the evidence tending to show that at the time of the payment it was applied to any specific part of the whole, and we accordingly are of the opinion that the principle of election has no application.

We yet retain the view that the evidence is sufficient to support the verdict of the jury on the issue of appellee's authorized credit, and think the motion for rehearing, as a whole, should be overruled. It is accordingly so ordered.

### On Motion For Leave to File Second Motion For Rehearing.

It seems to us that the able counsel for appellant has overlooked the effect of the right given by the contract to appellee to extend a credit in a stated amount to a named customer. Evidently appellant, by the contract, assumed the loss of a default in payment within the authorized credit, appellee not becoming personally obligated except for such part of the customer's indebtedness as exceeded the credit appellee was authorized to extend. If this construction of the contract be correct, and we think it is, it necessarily follows that, when the Blue Jay Service Station paid $589 on its indebtedness of $1,405, and when appellee's commissions in the sum of $175, admittedly due him, is added to the $589, the indebtedness of the Blue Jay Service Station left unpaid was less than the credit appellant was authorized to extend, and hence the burden of its loss, if any, rests on appellant and not appellee. We think this would be admitted had the payment of the Blue Jay Service Station been made to appellee and reported and remitted to appellant during the period of appellee's employment. The fact that the payment was made and received by appellant afterwards would not seem to alter the case. Apparently the trial court proceeded upon the theory above suggested, for the jury found appellee's authorized credit to be $750, and from the judgment we think it is to be inferred that the court proceeded to deduct from the $1,405 indebtedness of the Blue Jay Service Station the payment of $589 made by that station, and then applied so much of appellee's commission as was necessary to extinguish all indebtedness of the Blue Jay Service Station in excess of $750, awarding to appellee on its cross-plea only the balance of the commission due him with interest. This we think was approximately at least correct, and the motion to file second motion for rehearing is accordingly overruled.